# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 6, 2025

Lyle W. Cayce
Clerk

––––––––––––

No. 25-60016

––––––––––––

Cleto Marte Dominguez Reyes,

*Petitioner*,

*versus*

Pamela Bondi, *U.S. Attorney General*,

*Respondent.*

––––––––––––––––––––––––––––––

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A058 201 554

––––––––––––––––––––––––––––––

Before Davis, Stewart, and Ramirez, *Circuit Judges*.

W. Eugene Davis, *Circuit Judge*:

Under 8 U.S.C. § 1101(a)(43)(D), an alien's conviction for conspiracy to commit money laundering is an "aggravated felony" that renders him deportable, so long as "the amount of the funds exceeded $10,000." But the money-laundering statute, 18 U.S.C. § 1956(h), contains no monetary threshold, so immigration adjudicators must conduct a circumstance-specific inquiry to decide whether the funds involved in the alien's offense exceeded

No. 25-60016

$10,000.[1] This appeal asks whether that inquiry may be resolved with an unrebutted forfeiture order that entered solely against the alien and found $3.9 million in laundered funds attributable to the alien's conduct of conviction. We answer the question affirmatively, so we DENY this petition for review.

Cleto Marte Dominguez Reyes, a native and citizen of the Dominican Republic, was admitted to the United States in 2007 as a lawful permanent resident. On February 9, 2022, he pleaded guilty in the United States District Court for the Middle District of Florida to a single count of conspiracy to commit money laundering under 18 U.S.C. § 1956(h). A forfeiture order attached to the judgment of conviction reads: "[T]he Court hereby finds that at least $3,934,518 was obtained and laundered by the defendant as a result of his participation in the money laundering conspiracy, for which he has pled guilty."

On October 12, 2023, the Department of Homeland Security (DHS) issued a notice to appear, alleging Dominguez Reyes was removable as an aggravated felon whose money-laundering conspiracy involved more than $10,000.[2] On December 21, 2023, DHS submitted records from his conviction, consisting of the indictment, the presentence report (PSR), and the criminal judgment, to which the forfeiture order is attached. Relying on these records, an Immigration Judge (IJ) found Dominguez Reyes was an

---

[1] *See Nijhawan v. Holder*, 557 U.S. 32, 36 (2009); *United States v. Mendoza*, 783 F.3d 278, 282 (5th Cir. 2015).

[2] *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); *id.* § 1101(a)(43)(D) (defining "aggravated felony" as "an offense described in section 1956 of title 18 (relating to laundering of monetary instruments) . . . if the amount of the funds exceeded $10,000").

No. 25-60016

aggravated felon and removable as charged. Dominguez Reyes applied for cancellation of removal, but the IJ concluded he was ineligible for relief.[3]

Dominguez Reyes appealed to the Board of Immigration Appeals (BIA). There, he noted "the charging document, plea agreement, or judgment of conviction" in the record had no specific findings on the amount of funds laundered and challenged DHS's use of the forfeiture order to meet its burden of proof. Specifically, he asserted the forfeiture order did not meet the requisite evidentiary standard to establish that his conviction was an aggravated felony under § 1101(a)(43)(D) because it failed to specify the amount of money directly attributable to his conduct in the offense.

The BIA invoked the circumstance-specific approach endorsed by the Supreme Court[4] to resolve the amount-of-funds question and, ultimately, agreed DHS had carried its burden of proving the funds involved in Dominguez Reyes's offense exceeded $10,000. The BIA referenced the forfeiture order and found it "specifically identifies the amount that was directly attributable to [Dominguez Reyes's] personal conduct;" "establishes that the loss amount is sufficiently tethered and traceable to the conduct of conviction;" and is "not based on acquitted or dismissed counts or general conduct." Dominguez Reyes timely petitioned this court for review,[5] and bases his petition on the BIA's reliance on the forfeiture order.

This court has "no jurisdiction to review 'any final order of removal against an alien who is removable by reason of having committed' an aggravated felony. We do, however, review 'constitutional claims or

---

[3] *See id*. § 1229b(a)(3) (stating a lawful permanent resident is ineligible for cancellation of removal if convicted of an aggravated felony).

[4] *See Nijhawan*, 557 U.S. at 36.

[5] *See* 8 U.S.C. § 1252(b)(1).

questions of law raised upon a petition for review,' such as whether a conviction qualifies as an aggravated felony."[6] Review of that legal question is de novo.[7]

As noted above, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."[8] The term "aggravated felony" is defined at 8 U.S.C. § 1101(a)(43) by reference to over 20 categories of crimes.[9] Section 1101(a)(43) describes some categories in generic terms—for example, "murder, rape, or sexual abuse of a minor"[10]—and others by reference to specific criminal statutes or specific circumstances of a crime.[11] As relevant here, the statute defines a money-laundering offense under 18 U.S.C. § 1956, which includes conspiracy to commit money laundering under § 1956(h), as an aggravated felony so long as specific circumstances are met— "if the amount of the funds exceeded $10,000."[12]

---

[6] *Shroff v. Sessions*, 890 F.3d 542, 544 (5th Cir. 2018) (quoting first, 8 U.S.C. § 1252(a)(2)(C), then quoting *id*. § 1252(a)(2)(D) (internal citations omitted)).

[7] *See Rodriguez v. Holder*, 705 F.3d 207, 210 (5th Cir. 2013). We review the BIA's decision and consider the IJ's decision only to the extent it influenced the BIA. *See Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012).

[8] 8 U.S.C. § 1227(a)(2)(A)(iii). A lawful permanent resident is ineligible for cancellation of removal if he is an aggravated felon. *See id*. § 1229b(a)(3).

[9] *See id*. § 1101(a)(43)(A)–(U).

[10] *Id*. § 1101(a)(43)(A).

[11] *See, e.g.*, *id*. § 1101(a)(43)(E) (identifying offenses under 18 U.S.C. §§ 842(h), (i) and 922(g)(1)–(5), *etc.*).

[12] *Id*. § 1101(a)(43)(D) (stating an aggravated felony is "an offense described in section 1956 of Title 18 (relating to laundering of monetary instruments) . . . if the amount of the funds exceeded $10,000"); *see also* 18 U.S.C. § 1956(h) ("Any person who conspires to commit any offense defined in this section . . . shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.").

No. 25-60016

In *Nijhawan v. Holder*, the Supreme Court addressed how adjudicators should decide whether a conviction constitutes an "aggravated felony" when the § 1101(a)(43) definition depends on the specific circumstances of a crime. The definition of "aggravated felony" at issue there was a crime of fraud or deceit where the loss to the victim exceeds $10,000.[13] The Court held that, in determining whether a conviction meets this definition, adjudicators should use a circumstance-specific approach to look beyond the bare elements of the offense and examine the facts of the crime,[14] by reference to the alien's record of conviction.[15] Since *Nijhawan*, this court has applied the circumstance-specific approach to the same amount-of-funds determination at issue here—a conviction of conspiracy to commit money laundering that involved over $10,000.[16]

With those precedents, there's no question that the BIA correctly applied *Nijhawan*'s circumstance-specific approach to determine the amount of funds involved in Dominguez Reyes's conduct of conviction. The dispute on appeal is the BIA's reliance on the forfeiture order attached to Dominguez Reyes's judgment of conviction. He raises four arguments why the BIA erred in relying on it. First, he contends a forfeiture order is not a

---

[13] *Nijhawan*, 557 U.S. at 34–36 (applying 8 U.S.C. § 1101(a)(43)(M)(i)).

[14] *See id.*

[15] *See Fosu v. Garland*, 36 F.4th 634, 638 (5th Cir. 2022) (per curiam) (quoting *Arguelles-Olivares v. Mukasey*, 526 F.3d 171, 177 (5th Cir. 2008)). The Court rejected the petitioner's argument that adjudicators should use a categorical approach to determine whether a prior conviction meets a statutory definition by examining only the elements, not the facts, of the crime of conviction. *See Nijhawan*, 557 U.S. at 36.

[16] *See Mendoza*, 783 F.3d at 281–82 (applying *Nijhawan* in direct criminal case, where an "aggravated felon" as defined under 8 U.S.C. § 1101(a)(43)(D) unlawfully entered the United States, in violation of 8 U.S.C. § 1326).

type of document approved by *Shepard v. United States*,[17] or a substitute for a *Shepard*-approved document, because forfeiture is a "post-conviction penalty and does not require proof beyond a reasonable doubt." Second, he argues that the amount forfeited is not specifically tied to his offense of conviction, as *Nijhawan* requires, and entered on a preponderance-of-the-evidence standard—a lower standard than DHS's clear-and-convincing burden.[18] Third, he asserts the forfeiture order fails to specify the amount of money attributable to his individual conduct in the offense and instead applies the forfeiture amount to multiple codefendants. Finally, he claims his PSR shows he "did not personally handle more than $10,000" in funds.

We find Dominguez Reyes's arguments unavailing. Further, we hold that an unrebutted forfeiture order entered solely against an alien that finds a specific amount of laundered funds attributable to the alien's conduct of conviction can constitute clear and convincing evidence of the amount of funds required to be proven during a § 1101(a)(43)(D) circumstance-specific inquiry. We respond to each of Dominguez Reyes's arguments below.

The Court in *Nijhawan* rejected Dominguez Reyes's first argument that an adjudicator must use *Shepard*-approved documents (*viz.*, "charging documents, jury instructions, . . . any special jury finding" or "judge-made finding[s]" in a bench trial and, in the event of a plea, "written plea documents or the plea colloquy"[19]) when conducting a circumstance-specific

---

[17] *Shepard* held that sentencing courts must use a categorical approach and look only to a limited set of judicial records—such as the charging document, plea agreement, or transcript of the plea colloquy—when deciding whether a prior conviction qualifies as a predicate offense under the Armed Career Criminal Act. *See Shepard v. United States*, 544 U.S. 13, 20–21, 26 (2005).

[18] *See* 8 U.S.C. § 1229a(c)(3)(A) (establishing standard of proof in removal proceedings).

[19] *Nijhawan*, 557 U.S. at 41.

inquiry under the immigration laws. Indeed, the Court explicitly affirmed the use of non-*Shepard* "sentencing-related material" from the record of conviction, so long as those materials are "tethered" to the specific counts covered by the conviction.[20] Applying those principles, the Court found "nothing unfair" about the IJ's reliance on the petitioner's sentencing stipulation and a restitution order when deciding the amount of loss.[21] *Nijhawan* thus forecloses Dominguez Reyes's primary argument that the BIA was flatly prohibited from relying on the forfeiture order when conducting its circumstance-specific inquiry.

The United States Court of Appeals for the Second Circuit addressed Dominguez Reyes's second argument in *Barikyan v. Barr*.[22] There, an IJ relied on a $120,000 forfeiture order to find an alien removable due to his conviction for conspiracy to commit money laundering.[23] Like Dominguez Reyes, the alien argued his forfeiture order constituted findings by a mere preponderance not specifically tethered to his conduct of conviction.[24] The court rejected the alien's arguments, finding the BIA's decision in *In re Babaisakov* persuasive.[25] We do, as well.

In *Babaisakov*, the BIA acknowledged that, when assessing prior factfinding from a criminal case, an adjudicator should be mindful of the

---

[20] *Id.* at 42–43 (quote at 42) (approving of IJ's reliance on petitioner's stipulation of loss during sentencing and restitution order).

[21] *Id.*

[22] 917 F.3d 142, 146–47 (2d Cir. 2019).

[23] *See id.* at 144, 146–47.

[24] *See id.* at 146–47.

[25] *See id.* at 147 (citing *In re Babaisakov*, 24 I. & N. Dec. 306 (B.I.A. 2007)).

burden of proof employed.[26] But it also identified circumstances where facts proven by a lower standard may satisfy DHS's clear-and-convincing burden. These include situations where an alien fails to contest a fact found by a preponderance during the criminal proceedings; where there is an "absence of any showing in removal proceedings that there was error in the criminal proceedings respecting that fact;" and, where "the degree by which a loss is found to exceed $10,000" is significant.[27] Applying these considerations to the case before it, the Second Circuit concluded the forfeiture order was clear and convincing evidence that the alien laundered more than $10,000.[28] Likewise here, Dominguez Reyes failed to contest the forfeiture order in the criminal proceedings or to show there was an error in those proceedings as to the amount attributable to his offense of conviction. And the order requires forfeiture of an amount far beyond $10,000.[29] Indeed, the order here reflects Dominguez Reyes's conviction involved 390 times the $10,000 statutory threshold. In the absence of conflicting evidence or a showing of error in the criminal proceedings, the forfeiture order is clear and convincing evidence that the amount of funds attributable to Dominguez Reyes's conviction exceeds $10,000.

Dominguez Reyes's third argument about the forfeiture order's failure to separate out his individual conduct is likewise unavailing. His

---

[26] *See id.* (quoting *In re Babaisakov*, 24 I. & N. Dec. at 319).

[27] *Id.* (quoting *In re Babaisakov*, 24 I. & N. Dec. at 320, 320 n.11).

[28] *See id.*

[29] *See id.* at 146 ("[I]t was not clear error for the agency to find that at least $10,000 of the $120,000 forfeiture amount (less than 10%) reflected funds that were actually laundered."); *cf. Fuentes v. Lynch*, 788 F.3d 1177, 1183 (9th Cir. 2015) (collecting cases and applying circumstance-specific approach to hold "the BIA permissibly relied on the PSR to find, by clear and convincing evidence, that Arce conspired to launder more than $10,000, and is therefore an aggravated felon").

criminal judgment reflects that he pleaded guilty to Count 1 of his indictment for conspiracy to commit money laundering. The forfeiture order states plainly the district court's finding that "at least $3,934,518 was obtained and laundered *by the defendant* as a result of his participation in the money laundering conspiracy for which he has pled guilty." As the BIA noted, Dominguez Reyes is the only defendant named in the forfeiture order and, just like the *Nijhawan* petitioner, he offered no evidence to dispute its findings.[30] The forfeiture amount is thus "tied to the specific count of the conviction" and properly the basis for the BIA's circumstance-specific conclusion that Dominguez Reyes is an aggravated felon.[31]

Finally, the PSR cannot save Dominguez Reyes's appeal. It states Dominguez Reyes denied that his crime netted him more than $10,000 in profits, though his own attorney approximated his profits at $10,000. Regardless, Dominguez Reyes's profits are not the question the BIA was tasked with deciding. Rather, § 1101(a)(43)(D)'s language—"if the amount of the funds exceeded $10,000"—refers to the amount of funds involved in the offense of conviction, not the amount by which the alien personally profited.

Finding no reason to disturb the BIA's determination, we DENY Dominguez Reyes's petition for review.

---

[30] *Nijhawan*, 557 U.S. at 43 ("In the absence of any conflicting evidence (and petitioner mentions none), this evidence is clear and convincing.").

[31] *Fosu*, 36 F.4th at 638; *cf. id.* ("Fosu's order of restitution for $229,717.30—which reflects the amount owed within the judgment for his fraud conspiracy conviction—provides clear and convincing evidence of the losses to his victims.").