NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0134n.06

No. 09-4577

FILED

Feb 02, 2012

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RAMANI SRI PILLA,

    Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

    Respondents.

)
)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW OF
AN ORDER OF THE BOARD OF
IMMIGRATION APPEALS

Before: BOGGS and KETHLEDGE, Circuit Judges; and COLLIER, Chief District Judge.*

KETHLEDGE, Circuit Judge. Ramani Pilla, a native and citizen of India, petitions for review of an order of the Board of Immigration Appeals finding her removable as an alien who has committed an "aggravated felony," as defined by 8 U.S.C. § 1227(a)(2)(A)(iii). We deny the petition.

I.

Pilla was a legal permanent resident of the United States when she pled guilty to lying to the FBI, in violation of 18 U.S.C. § 1001. The facts of the case have been recounted in detail by the district court in Pilla's related criminal proceedings. Suffice it to say that Pilla, then an assistant professor at Case Western Reserve University, reported to the university and the FBI that she had

---

* The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

received four pieces of hate mail in her office. She later admitted to the FBI that she had written and planted the hate mail herself.

Pilla was ultimately charged with making fraudulent and false statements in violation of 18 U.S.C. §§ 1001-02. The Information against Pilla stated in relevant part:

COUNT 1

. . .

3. From on or about December 19, 2006 to on or about February 28, 2007 . . . Defendant perpetrated a hoax on [Case Western] and the FBI by knowingly and willfully making the following material false statements to agents of the Federal Bureau of Investigation ("FBI") alleging that, because of her ethnic origin and her gender, she had been the victim of a series of hate crimes.

(1) On or about January 23, 2007, Defendant reported to the FBI that on August 28, 2006, November 16, 2006, and January 16, 2007, she had received threatening hate mail in her office at [Case Western]. When asked by an FBI agent who might have sent her the letters, she named three possible suspects, all of whom were [Case Western] employees. She further stated that the suspects were motivated in part by her race and gender.

(2) On or about February 24, 2007, Defendant reported to the FBI that earlier in the day she had discovered a fourth threatening hate letter on the floor of her office at [Case Western].

(3) On or about February 28, 2007, Defendant, when being interviewed by an FBI agent about the above letters, stated that she believed the senders of the hate mail described above were retaliating against her for (1) making a complaint to a [Case Western] hotline alleging discrimination and (2) filing a complaint with the Equal Employment Opportunity Commission against [Case Western] alleging discrimination.

4. At the time Defendant made the statements described above, she knew they were false in that she had prepared the threatening hate mail herself and had delivered the letters to herself.

The Information further stated that the hoax described above cost the FBI $5,830 and cost Case Western approximately $80,000 to investigate.

Pilla did not enter into a written plea agreement. Instead, she pled guilty to an orally modified version of Count 1 that substituted "February 24, 2007" for "December 19, 2006" in Paragraph 3 and omitted Paragraph 3, Subparagraph (1). Thus, although Pilla did not object to the government's factual basis for the plea—which contained detailed information relating to all four letters—she pled guilty only to the charges relating to the fourth letter. The district court sentenced Pilla to six months' incarceration and ordered restitution of about $66,000. In her sentencing memorandum, Pilla conceded that her actions caused more than $10,000 but less than $30,000 in losses.

In September 2008, Pilla was charged with being removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii). That subsection provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." In her immigration proceedings, Pilla argued that her offense did not constitute an aggravated felony. The immigration judge rejected the argument because Pilla's conviction "involve[d] fraud or deceit in which the loss to the victim or victims exceed[ed] $10,000," as required for an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(M)(i). The immigration judge therefore ordered Pilla removed to India. The Board of Immigration Appeals agreed and dismissed Pilla's appeal. Pilla then petitioned this court for review. She has since been removed to India.

II.

Pilla argues that her conduct did not constitute an aggravated felony for immigration purposes. We review this question of law de novo. *See Patel v. Ashcroft*, 401 F.3d 400, 407 (6th Cir. 2005).

Pilla pled guilty to violating 18 U.S.C. § 1001, which prohibits, in relevant part, "knowingly and willfully . . . mak[ing] any materially false, fictitious, or fraudulent statement or representation" in matters within the jurisdiction of the federal government. *See id.* § 1001(a)(2). To satisfy the relevant definition of "aggravated felony," Pilla's conviction under § 1001 must be "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Pilla argues that her conviction does not meet this definition because her misstatements did not involve fraud and because she did not cause her victims a loss of more than $10,000. We address each of her arguments in turn.

First, Pilla contends that she was convicted of making false, not fraudulent, statements to the FBI. But the definition of "aggravated felony" includes offenses involving "fraud *or deceit*." *Id.* (emphasis added). "Deceit" is not defined in the Immigration and Nationality Act, so circuit courts apply the term's common meaning when interpreting § 1101(a)(43)(M)(i): "the act of intentionally giving a false impression." *See Valansi v. Ashcroft*, 278 F.3d 203, 209 (3d Cir. 2002) (quoting Black's Law Dictionary 413 (7th ed. 1999)); *see also Patel v. Mukasey*, 526 F.3d 800, 802 (5th Cir. 2008). Knowingly and willfully making a false statement to the FBI under 18 U.S.C. § 1001(a)(2) easily falls within this definition, so Pilla's argument fails.

Next, Pilla argues that the "only possible victim" of her crime was the FBI, so the relevant loss is that experienced by the FBI—$5,830. But "victim" likewise is not defined in § 1001; and the common definitions of the term are much broader than Pilla admits. In tort law, for example, anyone foreseeably harmed by negligent conduct is generally considered a victim. *See generally Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928). And in criminal law, defendants may be liable

for deaths that occur during the commission of inherently dangerous felonies—regardless of whether the victims were intended or anticipated—under the doctrine of felony murder. *See generally Tison v. Arizona*, 481 U.S. 137 (1987).

We need not comprehensively define "victim" to decide this case. For the term surely includes situations where the defendant actually intends to harm a person or entity. Here, Pilla intended to harm Case Western, and moreover it was foreseeable that an investigation of her deceit would cost Case Western substantial time and money. *Cf. United States v. Hildebrandt*, 961 F.2d 116, 119 (8th Cir. 1992) (holding that third parties were victims for sentencing purposes where the defendant made false statements about the parties' income to the IRS, triggering an investigation). Case Western was a victim of Pilla's deceit in any legal or moral sense of the term.

Since the FBI and Case Western are both victims, we may consider their combined losses in determining whether Pilla's offense caused a loss of more than $10,000. We evaluate "loss" under § 1101(a)(43)(M)(i) by looking to "the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion," including "sentencing-related material" such as restitution orders and sentencing stipulations. *Nijhawan v. Holder*, 129 S. Ct. 2294, 2302-03 (2009). Here, the sentencing-related material includes a restitution order of more than $66,000 and a sentencing memorandum in which Pilla admitted that "an appropriate estimate of the total loss caused by the crime to which [she] has entered her guilty plea exceeds $10,000, but is less than $30,000." These documents establish by clear and convincing evidence that Pilla's victims lost more than $10,000. *See id.* at 2303 (finding defendant's stipulation and sentencing court's restitution order established loss by clear and convincing evidence).

Pilla contends, however, that we cannot consider Case Western's losses because they were not sufficiently related to the convicted offense of lying to the FBI. The amount of loss "must be tied to the specific counts covered by the conviction." *Id.* In the absence of a written plea agreement specifying losses, the Supreme Court has suggested that a restitution order and sentencing stipulation are adequately tied to the offense of conviction and sufficient to establish losses if there is no conflicting evidence. *Id.* We have such an order and stipulation here, and Pilla does not present conflicting evidence. Instead, she reiterates her belief that the FBI is the only victim of her crime, so only FBI losses are adequately tied to the conviction. As discussed above, this argument is meritless.

Pilla also argues that her trial counsel was ineffective for admitting that relevant losses exceeded $10,000. She did not present this argument to the Board, however, so we lack jurisdiction to review it. *See Lin v. Holder*, 565 F.3d 971, 978 (6th Cir. 2009).

The petition for review is denied.