**NOT RECOMMENDED FOR PUBLICATION**
File Name: 14a0700n.06

**No. 13-4359**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 08, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| JIHAD AHMAD ZAHRA, | ) | |
| | ) | |
| Petitioner, | ) | ON APPEAL FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| V. | ) | |
| | ) | |
| ERIC HOLDER, JR., Attorney General | ) | **OPINION** |
| of the United States, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Before: ROGERS and GRIFFIN, Circuit Judges; VAN TATENHOVE, District Judge.**[*]

**GREGORY F. VAN TATENHOVE, District Judge.** Petitioner Jihad Ahmad Zahra seeks review of a final order of the Board of Immigration Appeals (BIA or Board) dismissing his appeal of an immigration judge's removal order. Zahra was ordered removed because he was convicted of an aggravated felony and because he had falsely represented himself to be a United States Citizen. Because the BIA correctly dismissed Zahra's appeal, his petition for review is hereby **DENIED**.

**I**

Zahra is both a native and a citizen of Lebanon but has been living in the United States as a conditional lawful permanent resident since 1995. Zahra's wife and four children are all United States Citizens. On September 11, 2008, Zahra pled guilty to making false statements for

---

[*] The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

the purpose of influencing actions of the Small Business Administration (SBA) in violation of 15 U.S.C. § 645(a). During his sentencing hearing in April of 2009, the Court engaged in a colloquy with defense counsel about the possible deportation implications of Zahra pleading guilty. The Court found Zahra guilty of violating 15 U.S.C. § 645 (a), sentenced him to probation and ordered him to pay $717,750.00 in restitution to a third party, Business Loan Express (BLX). A week later, the Court issued an Amended Judgment which, in compliance with the plea agreement, changed the amount of restitution owed to zero.

In March 2012, the Department of Homeland Security ("DHS") served Zahra with a Notice to Appear. DHS alleged that (1) Zahra's conviction rendered him removable as an alien who had been convicted of an aggravated felony and that (2) Zahra was also removable because he had falsely represented himself as a United States Citizen. The immigration judge ordered Zahra be removed, finding that Zahra's § 645(a) conviction qualified as an aggravated felony since the crime involved fraud or deceit and the loss was in excess of $10,000. The judge also concluded that Zahra had falsely represented himself to be a United States Citizen. Ultimately, the BIA dismissed Zahra's appeal. In his appeal, Zahra did not dispute the IJ's finding that his offense involved fraud or deceit but only argued that the loss did not exceed $10,000. Zahra subsequently appealed to this Court, and on April 9, 2013, we granted the government's unopposed motion to remand, sending the case back to the BIA to consider the significance of the statements related to the amount of loss made by the district court during Zahra's re-sentencing. Once again the BIA dismissed Zahra's appeal, concluding that Zahra had caused the SBA to lose $760,000 and that whether or not the SBA was made whole by BLX had no bearing on the question of whether the SBA had suffered an actual loss. The BIA's decision qualifies as a final agency decision. 8 C.F.R. §1241.1. Zahra now again petitions this Court for review.

## II

Legal questions regarding the "BIA's interpretation of statutes and regulations" are reviewed de novo. *Padhiyar v. Holder*, 13-3758, 2014 WL 1099103 (6th Cir. Mar. 20, 2014); *Sanusi v. Gonzales,* 474 F.3d 341, 345 (6th Cir. 2007); *Patel v. Ashcroft,* 401 F.3d 400, 407 (6th Cir. 2005). The question of whether criminal conduct constitutes an aggravated felony for immigration purposes is a question of law and must be reviewed de novo. *Pilla v. Holder*, 458 F. App'x 518, 520 (6th Cir. 2012). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). These factual findings are reviewed under the substantial evidence standard, and the court is to "uphold the Board's findings as long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Sanusi*, 474 F.3d at 345 (quoting *Mostafa v. Ashcroft,* 395 F.3d 622, 624 (6th Cir. 2005) (citations omitted)).

## A

For the first time, Zahra argues that his conviction under 15 U.S.C. § 645(a) is not a crime of fraud or deceit. This Court may only consider Zahra's argument if he has "exhausted all administrative remedies available to [him] as of right." 8 U.S.C.A. § 1252. "The purpose of Section 1252(d)(1)'s exhaustion requirement is (1) to ensure that ... the agency responsible for construing and applying the immigration laws and implementing regulations, has had a full opportunity to consider a petitioner's claims; (2) to avoid premature interference with the agency's processes; and (3) to allow the BIA to compile a record which is adequate for judicial review." *Bi Xia Qu v. Holder*, 618 F.3d 602, 609 (6th Cir. 2010) (quoting *Ramani v. Ashcroft,* 378 F.3d 554, 558 (6th Cir. 2004)). "[T]his requirement is jurisdictional, and thus where a petitioner has failed to exhaust his administrative remedies, 'a federal court is without

jurisdiction to consider his petition for review.'" *Hassan v. Gonzales*, 403 F.3d 429, 432 (6th Cir. 2005) (quoting *Perkovic v. INS,* 33 F.3d 615, 619 (6th Cir. 1994)).

Concerning the first issue on appeal, Zahra did not contest the IJ's "fraud or deceit" finding in his first appeal of the IJ's decision to the BIA. The BIA explicitly acknowledged that he had not raised this issue in its first ruling, stating "the respondent does not dispute that his offense involved fraud or deceit, he argues that the Immigration Judge erred in concluding his offense resulted in a loss over $10,000 to the SBA." [A.R. 108 (BIA Decision 2012).] Nor did Zahra contest this issue in his second appeal brief to the BIA. Zahra also did not contest this issue in his April 25, 2013 Motion to Terminate. "It is proper for an appellate court to consider waived all issues not raised in an appellant's briefs, even if the issue has been raised in the notice of appeal." *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004). As in *Ramani*, Zahra's arguments relating to fraud and deceit were not properly presented to the BIA. To now consider those arguments would undermine the purposes of the exhaustion requirement in § 1252(d)(1). In the context of an immigration appeal, federal courts do not have jurisdiction to consider a petitioner's claims unless administrative remedies have been exhausted, which includes requiring the alien to preserve each claim by presenting it first to the BIA. *Id*. at 559; *Perkovic*, 33 F.3d at 619; *Pilla*, 458 Fed. Appx. At 522 (determining that court lacked jurisdiction to review arguments not previously presented to the Board); *Hassan*, 403 F.3d at 432 (stating that federal courts only have jurisdiction to review final orders of removal if the alien has first exhausted all administrative remedies); *Harchenko v. INS*, 22 Fed. Appx. 540, 543 (6th Cir. 2001) (refusing to consider petitioner's arguments that were not previously presented to and decided by the IJ and BIA because such arguments "are precluded as unexhausted issues, which this court has no jurisdiction to review"); *Dokic v. INS*, 899 F.2d 530, 532 (6th Cir. 1990) (considering

unreviewable any claims not previously presented to the BIA because petitioners must first exhaust their administrative remedies before obtaining judicial review by this court).

Simply put, the record reflects that Zahra failed to contest the IJ's finding concerning fraud or deceit in his appeal to the BIA. Hence Zahra did not exhaust his administrative remedies on this claim and it is not subject to review.

**B**

Zahra was convicted of knowingly and willfully making material false statements for the purpose of influencing the action of the SBA in connection with the issuance of a SBA-guaranteed loan. The statute criminalizing this conduct provides that:

> Whoever makes any statement knowing it to be false, or whoever willfully overvalues any security, for the purpose of obtaining for himself or for any applicant any loan, or extension thereof by renewal, deferment of action, or otherwise, or the acceptance, release, or substitution of security therefor, or for the purpose of influencing in any way the action of the Administration, or for the purpose of obtaining money, property, or anything of value, under this chapter, shall be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both.

15 U.S.C. § 645(a). Whether Zahra's conviction under this statute qualifies as an aggravated felony, pursuant to 8 U.S.C. § 1101(a)(43)(M)(i), is the question currently before us. An aggravated felony is defined as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Determining whether Zahra's crime so qualifies requires two distinct inquiries. First, does the offense involve fraud or deceit? As explained *supra,* this argument was not fully exhausted before the BIA, and this Court may not consider it. Second, does the loss exceed $10,000? It is to this question that we now turn.

In determining whether losses exceed $10,000, the court is to apply a "circumstance-specific approach" and is to consider the details surrounding the commission of the fraud or

deceit crime on a specific occasion. *Nijhawan v. Holder*, 557 U.S. 29, 40 (2009). The circumstance-specific approach requires courts to go beyond the categorical and modified-categorical approaches and permits courts to consider "sentencing-related material[s]." *Nijhawan*, 557 U.S. at 42. Because deportation proceedings are civil in nature, the Government must present clear and convincing evidence to show that the loss exceeded $10,000. *Nijhawan*, 557 U.S. at 42.

Zahra argues that he did not cause a loss to any victim in excess of $10,000, and that the IJ and the BIA ignored the district court's "clear findings" that there was no loss owing to Zahra's fraud or deceit. Instead, he argues that the IJ partook in an impermissible, open-ended inquiry. Zahra maintains that the District Court found that the offense resulted in a total loss of zero. The IJ and the BIA both looked extensively at the criminal proceedings and determined that the loss resulting from Zahra's crime exceeded $10,000. We agree.

On September 11, 2008, Zahra stipulated that he had applied for a $760,000 SBA-guaranteed loan and that he had misrepresented his own financial information in attempting to get the loan. The plea agreement further provides:

> The parties agree and stipulate that the **monetary loss incurred by the Small Business Administration** as a result of this fraud has been recouped through payment from Business Loan Express, which does not seek restitution from this Defendant. Thus, no restitution will be required under this plea agreement.

[A.R. 337 (Plea Agreement) (emphasis added)]. The parties also agreed to the sentencing guideline range "as set forth" in the worksheets attached to the plea agreement. Those worksheets include a finding that, pursuant to USSG 2B1.1(b)(1)(H), the appropriate loss amount attributable to Zahn's conduct was more than $400,000.

At the plea hearing, defense counsel entered into a dialogue with the court regarding his concerns about Zahra's possible deportation:

-6-

THE COURT: Well, he's not concerned about the custody term. He's concerned about the potential of deportation.

Ms. SOUTHERN: I understand that.

Mr. SCHARG: There's two criteria for aggravated felony. If he's determined to be an aggravated felon, then he would be deported, and the two parts are, one, that he's sentenced to more than one year.

THE COURT: Yes.

MR. SCHARG: Second is that the amount of the loss is $10,000 or more. We have gone to an immigration lawyer, who is a top lawyer in -- whose name is George Mann, immigration lawyer. He did some research and indicated that as long as the amount of the loss for purpose -- that we can, we can, we can say that the -- for purposes of guidelines that the amount of loss was 350,000, but that's only for calculating the guidelines and that the amount of the loss is less than 10,000, we can enter the plea, and that's where we have been negotiating around.

THE COURT: **Well, wait a second. I can't get involved in that. You are going to have to work this out yourself**…

[A.R. 307-308 (Plea Hearing)]. Later in the proceeding, Mr. Scharg made a further request that, at the time of sentencing the court incorporate the following findings into its judgment:

…the loss as referred to in calculating the guidelines as referred to in the plea agreement was a loss only for purposes of the sentencing guidelines, and furthermore, we are going to ask this Court to find in its judgment that Mr. Zahra's conduct did of course cause societal harm resulting from the proliferation of fraudulent documents, but not a monetary loss from fraud or deceit.

[A.R. 317-318 (Plea Hearing)]. The court, apparently perplexed, asked the Government if they would object to those findings. The Government explained that they were "not going to object if the Court makes those findings **with the caveat that the loss that was actually incurred was already paid back by BLX, Business Loans Express**, and so there is no restitution here." [A.R. 317-318 (Plea Hearing) (emphasis added)].

At the sentencing hearing on April 16, 2009, defense counsel again brought up the deportation issue and the following conversation ensued:

THE COURT:  That's another consideration I should have mentioned. If I sentence you to a custodial term of any kind, there is the possibility that you will be deported, and given your family circumstance, the Court does not think that deportation is in order. So to maximize your opportunity to defend against the possibility of deportation, that's an additional consideration in placing you on probation.

MR. SCHARG:  But my understanding, Judge, is that with restitution – it's a two-part, it's a two-part issue -- is that, that restitution could also create the issue of classifying this as an aggravated felony unless the restitution is less than $10,000 and the value of the loss is less than $10,000.

THE COURT:  **Well, I can't say the value of the loss is less than $10,000**, Mr. Scharg, and I can't say the restitution is less than $10,000.  **I don't know how I can do that because the loss was $717,750, and it's joint and several with two other persons**.

MR. SCHARG:  In the Rule 11 Agreement the government has taken the position that there is no restitution, there is no restitution.

THE COURT: Is that true?

MS. SOUTHERN:  NO, Your Honor. The Rule 11 Agreement contemplates that there would be no restitution only to the Small Business Administration because BLX paid the Small Business Administration. We never stood in the position of BLX or –

THE COURT:  What's the name of the company?

MS. SOUTHERN: Business Loan Express.

THE COURT:  Business Loan Express. That's the victim in the case.  **No, I can't do that, Mr. Scharg. You will have to fight that out with the authorities. I don't want to go any further than that.**

[A.R. 293-296 (Sentencing Hearing) (emphasis added)].  On April 16, the court's judgment ordered Zahra to pay $717,750.00 in restitution to BLX.  A week later, on April 23, the court held a re-sentencing hearing to clarify issues related to restitution.  The Government explained that it was not requesting restitution be made to BLX because BLX was in bankruptcy and did

not intend to seek compensation from Zahra. Finally, at the conclusion of the re-hearing, Mr. Scharg entered into the following colloquy with the judge:

> MR. SCHARG: Judge, would you look at Page 17 of the plea?
>
> THE COURT: Yeah.
>
> MR. SCHARG: Page 17 of the plea hearing.
>
> THE CLERK: Of the plea hearing transcript?
>
> MR. SCHARG: Yes, that's from September 11th and we are asking you to put additional language in that judgment that was agreed to by the Government at that time.
>
> THE COURT: **The loss referred to in calculating the guidelines as referred to in the Plea Agreement was a loss only for the purpose of the guidelines. Mr. Zahra's conduct did, of course, cause societal harm resulting from proliferation of fraudulent documents but not a monetary loss from fraud or deceit.**
>
> Okay. That's it.
>
> Mr. SCHARG: Thank you, Judge.
>
> MS. SOUTHERN: Thank you, Your Honor.

[A.R. 492 (Re-Sentencing Transcript) (emphasis added)]. Following the hearing, the court issued an Amended Judgment which, in compliance with the plea agreement and in accordance with representations made during the re-sentencing hearing, changed the amount of restitution owed to zero.

Zahra now claims that the district court Judge intended that the amount of loss be zero. Contrary to the position of the Petitioner, this is far from "clear." Only on one occasion did the Judge indicate that Mr. Zahra's conduct did not result in a real, monetary loss. The ambiguity surrounding this comment is why, upon the request of the Government, this Court previously

remanded this case to the BIA. Following the remand, the BIA reviewed the record again and affirmed its earlier decision.

That decision is correct. First, we consider the many statements made by the district court judge regarding the monetary loss in this case. The judge made it clear on numerous occasions that he would not involve himself in trying to craft a judgment to sidestep the deportation rules related to what qualifies as an aggravated felony. When first approached about fashioning sentencing language in such a way as to get around the $10,000 loss requirement the Judge remarked, "well, wait a second. I can't get involved in that. You are going to have to work this out yourself. " [A.R. 308 (Plea Hearing)]. Later in that same hearing, the Judge again rebuffed defense counsel's effort to paint the loss below $10,000: "[w]ell, I can't say the value of the loss is less than $10,000… because the loss was $717,750." [A.R. 317-318 (Plea Hearing)]. Finally, at the re-sentencing hearing Mr. Scharg asked the Judge to incorporate the "additional language in that judgment that was agreed to by the Government" at the time of the plea hearing, referring to the language previously rejected by the Judge. [A.R. 492 (Re-Sentencing Transcript)]. The court read the controversial paragraph into the record but it cannot be read in isolation and cannot be construed as a "finding" of the court.

For a number of reasons the Judge's final comments cannot be construed as a definitive statement on the amount of loss. First, as the language was at the time of the plea hearing, and as "agreed to by the Government," there was a caveat that an actual loss was incurred but that no restitution was due. Second, as has been shown, this final paragraph directly contradicts all other clear statements of the district court. Third, the Amended Judgment did not reflect this language or any other change indicating the loss amount was less than $10,000. To the contrary, the district court judge said the "amended judgment will be entered the same as the former one

except there will be no restitution ordered." [A.R. 490 (Re-sentencing hearing)]. Zahra's claim that there was no monetary loss because he did not have to pay restitution is unpersuasive. The court's decision not to order restitution is not necessarily connected to the amount of loss incurred. *Nijhawan* makes clear that "a restitution order must be assessed in the context of 'conflicting evidence.'" *Singh v. Attorney Gen. of U.S.*, 677 F.3d 503, 515 (3d Cir. 2012) (quoting *Nijhawan*, 557 U.S. at 42). The Third Circuit has "taken the position that a restitution order 'may be helpful' to the loss inquiry, but is not definitive." *Singh*, 677 F.3d at 515 (citing *Munroe v. Ashcroft,* 353 F.3d 225, 227 (3d Cir. 2003)). Because of BLX's bankruptcy, the amount of restitution owed in this case is a wholly separate inquiry from the loss amount. Finally, all other evidence demonstrates that defense counsel's insistence that the court recite this statement was nothing more than an effort to circumvent the district court's clear intentions. This is not the first time that an arbiter has so concluded.

The IJ concluded that the Judge's statement was ambiguous as he "was merely repeating what Mr. Scharg had said at the plea hearing" and ultimately found that "the government's position throughout the plea and sentencing hearings, and the hearing transcripts overwhelmingly and unequivocally demonstrate that [Zahra's] actions caused a monetary loss to the SBA." [A.R. 265-267 (IJ Decision)]. The BIA affirmed the IJ's decision, finding that Zahra had stipulated to the loss and that the Judge's language in the sentencing hearing could not negate the fact that Zahra had so stipulated. The BIA further pointed out that, even if it concluded that the SBA did not suffer a loss, BLX would have borne that loss. The BIA came to a similar conclusion when it reviewed the case again, in response to this Court's remand order, concluding that the Judge's statement at the re-sentencing hearing did not amount to a finding that no loss occurred. Specifically, the BIA found that the Judge's statement was a "recitation" of the language

requested by the parties and was made "with the understanding that the SBA was reimbursed by BLX, and was not finding that there was no loss to anyone." [A.R. 6 (BIA Decision 2013)]. The BIA concluded that "[t]he fact that BLX did not seek restitution due to its own financial situation does not negate the fact that the SBA incurred a loss in the amount of the loan due to the respondent's actions." [*Id.*]

The record plainly shows that a loss occurred. Nothing in the plea agreement suggests that the SBA did not suffer a monetary loss. This point was made by the IJ and the BIA. Quite to the contrary, the plea agreement contains both a stipulation that provides a "monetary loss [was] incurred by the Small Business Administration as a result of this fraud" and a stipulated finding, for purposes of calculating the sentencing guidelines, that the loss exceeded $400,000. [A.R. 336 (Plea Agreement)]. The Government also spoke to defense counsel's requested finding about restitution and loss at the plea hearing and explained that because "the **loss that was actually incurred** was already paid back by BLX" there would be no restitution. [A.R. 317-318 (Plea Hearing) (emphasis added)]. Zahra's plea agreement's reference to a "monetary loss incurred" is strong evidence that there was an actual monetary loss resulting from Zahra's fraud. Even if one concluded that the SBA had not suffered a monetary loss, there is no way around accepting that it would be borne instead by BLX.

In light of the strong evidence presented, it is clear that Zahra's 15 U.S.C. § 645(a) conviction caused an actual loss in excess of $10,000 and qualifies as an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(M)(i). His removal must be upheld.

**C**

Finally, Zahra argues that the IJ erred by concluding that his statement that he was a U.S. Citizen was for a "purpose or benefit" so as to establish removability under Section 237(a)(3)(D)

of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(3)(D).  The Government concedes that DHS presented "no evidence or argument" as to the purpose or benefit of Zahra's misrepresentation.  Consequently, if we had determined that  Zahra had not committed an "aggravated felony," then the issue regarding Zahra's false claim to U.S. Citizenship would have been remanded to the BIA.  *See also Hassan v. Holder*, 604 F.3d 915, 918 (6th Cir. 2010).  Because of our contrary holding, the question is moot.

## III

Zahra waived his arguments about whether his conviction under 15 U.S.C. § 645(a) is a crime of fraud or deceit, it has been shown by clear and convincing evidence that the resulting monetary loss was in excess of $10,000 and the Government conceded that they presented no evidence as to the purpose or benefit of Zahra's alleged false claim to U.S. Citizenship.  Zahra is an aggravated felon pursuant to 8 U.S.C. § 1101(a)(43)(M)(i) and his petition for review is **DENIED**.